OPINION
This is an appeal from the Lake County Court of Common Pleas. Appellant, Henry K. Thomas, Jr., appeals from the sentence imposed on him and also appeals the constitutionality of the "bad time" provisions.
On the evening of December 20, 1997, in the city of Willoughby Hills, appellant operated a motor vehicle while under the influence of alcohol and/or drugs. While he was changing lanes to exit the freeway, he struck a pedestrian, Linda Martahus ("victim"), with his vehicle and caused her death.
On January 26, 1998, appellee, the State of Ohio, charged appellant by way of information with one count of aggravated vehicular homicide, a felony of the third degree, in violation of R.C. 2903.06, with a specification that appellant was under the influence of alcohol and/or drugs during the commission of the offense ("count one"); and one count of driving while under the influence of alcohol or drugs, a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1) ("count two").
On February 4, 1998, appellant formally waived prosecution by indictment and requested that the charges against him proceed by way of information, and he entered a plea of guilty to both counts. In a judgment entry dated February 11, 1998, the trial court accepted appellant's plea and referred the matter to the Adult Probation Department of the Lake County Court of Common Pleas for a pre-sentence report and investigation and victim impact statement.
A sentencing hearing was held on March 4, 1998. Prior to imposing sentence, the trial court allowed appellant's attorney to speak in his behalf. He requested that appellant be given the minimum sentence since he did not leave the scene of the accident. Rather, appellant realized he ran into something and returned to the location to see what he had hit. He was also cooperative with the police officers. Appellant's attorney made reference to the pre-sentence report, which demonstrated that he had been reliving the incident both day and night, and that he never meant to harm anyone. Further, appellant's counselor admitted that appellant "should not have been drinking that night. * * * He has * * * numerous medical conditions. He is under disability as well." The pre-sentence report mentioned that appellant suffered horribly as a child, and that he attempted to commit suicide at the age of twelve. According to appellant's attorney, the report revealed that appellant had been shot in 1980, and has been in chronic pain since that time. Appellant's attorney described appellant as a generous individual who gives to his friends even though he is impoverished. He concluded by asking that the trial court consider all of the factors and sentence appellant to the minimum term. In addition, he objected to bad time and any post-release control time.
The trial court asked appellant if he wished to address the court. He stated that he used bad judgment and said that if he could change things he would. He also indicated that what occurred is something he will have to live with for the rest of his life.
Following appellant's statements, the victim's husband addressed the court and stated that his late wife was the mother of three children and that she had two sisters. Her activities in the community were as follows: (1) she was the soccer coach to her daughter's team; (2) she was a brownie troop leader; (3) she sat on the board of directors for the young audience where she was instrumental in bringing art and music to the area schools; and (4) she was involved with the Junior League of Cleveland where she read to children who were ill in the hospital. The victim's husband described his late wife as a Good Samaritan. He explained that her death not only affected their family, but it affected the entire community.
The victim's husband also discussed appellant's character and depicted him as a man who disregards the law and interests of others. He further stated that he was not out for revenge, but he believed that no one forced appellant to drink and drive, but he decided to do it on his own. The victim's husband indicated that the justice system had been lenient with appellant before because he had previously received shock probation. He felt that appellant showed no remorse as he made no attempt to contact any member of the victim's family. He mentioned that if appellant had been sober, he would have realized that he hit a person. The victim's husband concluded his statements to the trial court by requesting that it consider the maximum term in this matter.
At the conclusion of the victim's husband's testimony, one of her sisters also submitted a statement and requested that the court give appellant the maximum penalty allowed by law. She gave the trial court a synopsis of appellant's criminal history. She mentioned that appellant was convicted and sentenced to prison for five to twenty-five years for aggravated robbery with a knife specification in March of 1993, but he only served three months and then was placed on shock probation. She stated that appellant was arrested in Houston, Texas for auto theft in 1987, was convicted and given five years probation. He was also arrested in 1982 and 1986 in Texas. Furthermore, he was arrested in St. Louis twice in 1988, once in 1989, and once in 1991. The victim's sister felt that appellant showed no remorse and that he made several false statements on the police video which was taken after the incident. She proceeded to describe her sister and revealed that her sister was a nurse and gave up her career to raise her children.
Following the victim's sister's testimony, the prosecution recommended that appellant's driver's license be permanently revoked. The prosecution urged that the maximum sentence of five years be imposed since appellant had previously served a prison term. The prosecution also recounted appellant's criminal history and disclosed that a breathalyzer test revealed .165 percent alcohol in appellant's blood.
The trial court proceeded with sentencing after acknowledging that it had considered "the provisions of [R.C.] 2901.021,2929.01, 2929.11 through 2929.19, and related sections of the Revised Code concerning mandatory sentencing." The trial court stated that it considered the victim impact statement, the many letters received on behalf of the victim, the statements of both the victim's husband and her sister, and the pre-sentence report and the recommendations by the Lake County Probation Department. The judge indicated that:
 "[U]nder factors indicating that the offense is more serious is the criteria that the victim suffered serious physical, psychological or economic harm. Well, here we have a victim who died and whose family's lives are suffering serious economic harm and psychological harm.
"Under less serious, I find nothing."
Additionally, the judge stated that "[u]nder the factors indicating recidivism, there is a history of criminal convictions and alcohol/drug abuse was related to the offense and [appellant] denied [that] he had a problem." The judge continued by noting that "in sentencing [appellant] to the maximum prison sentence, * * * I do find that this is the worst form of this offense which can occur. I also find that you pose a great likelihood of committing future crimes." The trial court proceeded with sentencing appellant.
In a judgment entry dated March 6, 1998, the trial court sentenced appellant to serve a definite prison term of five years on count one and six months on count two to run concurrently. Appellant received seventy-five days credit for time already served. Further, the trial court ordered that appellant's driver's license be permanently revoked and that a mandatory fine of $150 be imposed. The trial court also advised appellant of the "bad time" and "post-release control" provisions of R.C. 2967.11 and R.C. 2967.28.
On April 6, 1998, appellant timely filed this notice of appeal. Appellant now asserts the following assignments of error:
 "[1.] The trial court abused its discretion by failing to make findings required by Ohio Revised Code section 2929.14(C) thereby prejudicing the defendant-appellant.
 "[2.] By sentencing the appellant pursuant to section 2967.11 of the Ohio Revised Code, as amended by Senate Bill 269, the trial court relied on unconstitutional legislation and instituted an unlawful sentence."
 In the first assignment of error, appellant contends that the trial court abused its discretion in sentencing him to a maximum prison term. Specifically, appellant asserts that the trial court failed to make the requisite findings of R.C. 2929.14(C) prior to imposing the maximum sentence allowed for a third degree felony.
Effective July 1, 1996, the Ohio criminal sentencing laws were modified. Specifically, a sentencing court must consider the factors set forth in R.C. 2929.12 concerning the seriousness of the offender's conduct and the likelihood of recidivism. State v.Hammons (Dec. 15, 1997), Clermont App. No. CA97-02-007, unreported, at 1, 1997 WL 779085. A sentencing court may confine an offender to the maximum authorized prison term for the offense after making a determination that the offender committed the worst form of the offense, posed the greatest likelihood of committing future crimes, was a certain major drug offender, or was a certain repeat violent offender. R.C. 2929.14(C). A trial court must specifically determine that the offender meets one of the four categories and state its reasons, on the record, for imposing the maximum sentence. See State v. Lenegar (Feb. 3, 1999), Vinton App. No. 98 CA 521, unreported, at 7, 1999 WL 59727.
In the case at bar, appellant was convicted of one count of aggravated vehicular homicide, a third degree felony, while he was under the influence of drugs and/or alcohol. Both R.C. 2903.06(C) and R.C. 2929.13(F)(4) dictate that appellant serve a mandatory prison term of "one, two, three, four, or five years." See R.C.2929.14(A)(3). Additionally, State v. Rose (Sept. 15, 1997), Clermont App. No. CA96-11-106, unreported, at 5, 1997 WL 570695, states that a reviewing court will not disturb a sentence imposed by the trial court unless it finds:
 "* * * by clear and convincing evidence that either the record does not support the sentence or that the sentence is otherwise contrary to law. Clear and convincing evidence is that evidence which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. It is an intermediate standard of proof, being more than a preponderance of the evidence and less than evidence beyond a reasonable doubt."
In the case sub judice, the record demonstrates that appellant committed the worst form of the offense and/or posed the greatest likelihood of committing future crimes. When considering whether an offense was the "worst form of the offense," a trial court should consider the totality of the circumstances, not just an evaluation of a victim's injuries. State v. Garrard (Dec. 24, 1997), Wayne App. No. 97CA0032, unreported, at 3, 1997 WL 803123. Appellant committed the offense of aggravated vehicular homicide while under the influence of alcohol and/or drugs. This offense occurs when the offender acts recklessly not intentionally. Therefore, although appellant did not intentionally cause the death of another, nonetheless, he operated an automobile while under the influence of alcohol and/or drugs. We conclude that from the totality of the circumstances, there was a basis for the trial court to determine that he committed the worst form of the offense since he was under the influence of alcohol and/or drugs at the time. Moreover, the facts show that appellant did not even realize that his vehicle came in contact with an individual.
Further, the record reveals that appellant posed the greatest likelihood of committing future crimes. The testimony at the sentencing hearing demonstrated that appellant had a lengthy criminal history. He had been in prison and on probation several times, which indicates that appellant had not been rehabilitated. In considering appellant's history, we agree with the trial court's conclusion that appellant posed a risk of committing future offenses. We are mindful that the record indicates that appellant enjoyed about a four year period of recidivism. However, based on a comprehensive review of appellant's criminal record, and the fact that he was guilty of the criminal charge in this matter, it is our view that the trial court did not abuse its discretion in imposing the maximum sentence on appellant.
Appellant also argues that the trial court erred in fulfilling the requirements of R.C. 2929.19(B)(2), which states that:
 "The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
"* * *
 "(d) If the sentence is for one offense and it imposes a prison term for the offense that is the maximum prison term allowed for that offense by division (A) of section 2929.14 of the Revised Code, its reasons for imposing the maximum prison term;
 "(e) If the sentence is for two or more offenses arising out of a single incident and it imposes a prison term for those offenses that is the maximum prison term allowed for the offense of the highest degree by division (A) of section 2929.14 of the Revised Code, its reasons for imposing the maximum prison term."
 Thus, under the foregoing statute the trial court must make a finding and give its reasons for imposing the maximum prison term. As long as the trial court has complied with the statute by making findings in the record, written findings are not required. State v. Wooden (Feb. 11, 1998), Summit App. No. 18448, unreported, at 5, 1998 WL 78674.
In the instant matter, the trial court adequately stated its reasons for imposing the maximum prison term. Specifically, the trial court recited the following language:
 "[I]n sentencing [appellant] to the maximum prison sentence, * * * I do find that this is the worst form of this offense which can occur. I also find that you pose a great likelihood of committing future crimes."
In making its determination, the trial court indicated that it considered the victim impact statements, letters it received, the pre-sentence report, and recommendations of the probation department. The trial court noted the economic and psychological impact the victim's death had on her family. The trial court also outlined appellant's criminal history and discussed the absence of any mitigating factors. Furthermore, the judgment entry reflected the trial court's determination that appellant committed the worst form of the offense and that he posed the greatest likelihood of committing future crimes. Therefore, we determine that after reviewing the record, the trial court adequately fulfilled the requirements of R.C. 2929.19(B)(2). Appellant's first assignment of error lacks merit.
In the second assignment of error, appellant asserts several constitutional attacks on the "bad time" provision of R.C. 2967.11
and the post-release control statute, R.C. 2967.28, including due process, separation of powers, double jeopardy, and equal protection. R.C. 2967.11 allows the parole board to extend the sentence of a prisoner if he or she is found to have committed an act in prison that would constitute a criminal offense. R.C.2967.28 permits, and at times mandates, the parole board to subject a prisoner to post-release control upon his release from prison, during which the prisoner must comply with certain guidelines. Appellant contests the procedures utilized in R.C.2967.11 and R.C. 2967.28 that could result in an increase of his prison sentence.
In State v. Spikes (Sept. 4, 1998), Lake App. No. 97-L-158, unreported, this court considered various constitutional challenges to the bad time and post-release control statutes. InSpikes, the appellant's sentencing entry included notice that "`bad time may be imposed by the Parole Board under Revised Code Section 2967.11 for certain rule violations committed while in prison.'" Id. at 2. Additionally, the appellant "was also notified that post-release control was optional in his case * * * and was ordered to serve as part of his sentence any term of post-release control imposed by the Parole Board, as well as any prison term for a violation of that post-release control." Id. This court held that a prisoner who is notified that he is subject to R.C. 2967.11 and 2967.28, but who has not yet suffered the actual imposition of additional time in prison or post-release control pursuant to those sections, lacks standing to challenge the constitutionality of the bad time and post-release control provisions, and that the constitutionality of those statutes was not ripe for review. Id. at 4.
Likewise, in the case at bar, appellant does not assert, and the record does not reveal, that the trial court has yet imposed bad time or post-release control upon appellant. Hence, pursuant to our holding in Spikes, appellant lacks standing to contest the constitutionality of these statutory provisions at this time. Appellant's second assignment of error is without merit.
As in Spikes, we expressly indicate that nothing in our mandate in this case should be construed as creating a bar by way of resjudicata or collateral estoppel that would prohibit appellant from prospectively again raising the constitutionality of the bad time provision contained in R.C. 2967.11 or the post-release control concept set forth in R.C. 2967.28 under a proper factual predicate. A panel of this court recently held that the bad time provision in R.C. 2967.11 was unconstitutional in a habeas corpus proceeding. See White v. Konteh (Mar. 23, 1999), Trumbull App. No. 99-T-0020, unreported. Subsequent to the appeal in White, the Supreme Court issued a stay. Based on the Supreme Court's procedural ruling, the majority of this court is of the opinion that the bad time issue in this case remains controlled by the rationale we expressed in Spikes until the Supreme Court rules on the issue.
For the foregoing reasons, appellant's assignments of error are without merit. The judgment of the Lake County Court of Common Pleas is affirmed.
_______________________________________
PRESIDING JUDGE DONALD R. FORD
NADER, J., concurs,
O'NEILL, J., concurs in judgment only.